Mr. Edelstein to the appellant and Mr. Stewart to the appellant Good morning, Your Honor. May it please the court. Ben Edelstein for the plaintiff's appellant. In this case, I'd like to reserve four minutes for rebuttal. Your Honor, this case is not moved because we are still seeking relief that would benefit the plaintiffs. Specifically, we're seeking an order that would require the government to process the visa applications on the merits, meaning without regard to any entry suspension under 1182F and without regard to the end of the fiscal year. That would benefit the plaintiffs because there's every reason to think that if the court issued that order, the government would process the visa applications and the visas would issue. Now, the government argues that you should affirm principally on the basis of the fiscal year deadline. The district court rejected that correctly, and there are really four points I want to make about the fiscal year deadline. The first is, I think it's clear that if the district court had just ordered the government to process the applications, as we asked it to do, that that order would have been enforceable even after the deadline, even though that would require issuing visas after the deadline. Every court to consider that situation has either held that to be the case, or approved cases holding that to be the case, or reserved the question. And the government, as the district court pointed out, essentially conceded that below. That's at JA-148. So nobody is really arguing that this is an exceptionless deadline. The question is whether this case is different because the court did something more generous to the government. The court said rather than requiring them to issue or process visa applications immediately, she would be more cautious and not require them to do that yet, but would instead require them to reserve the visa numbers for processing after the deadline. And I just don't think it makes any sense that by being more generous to them, she could have... But didn't her reasoning turn on the status of E02 and the litigation for the Supreme Court? I don't think it did. And I think in order to unpack that... Let me ask you a factual question. Sure. So what is the State Department's current policy? I mean, the policy at issue here was created in the wake of E02. Right. What is it now? Well, there's nothing in the record suggesting that this cable was ever rescinded or modified. As I understand it, with respect to cases processed under the current proclamation, which ours never were, they still do not issue visas to people who they believe are not eligible to enter under 1182-F. And I hope at some point I can say a few words about the merits and why we think that policy is wrong. But just to go to your initial question about the district court's reasoning and its connection to E02, I think it's important to understand sort of what this case was and wasn't about in the first place. And I think the complaint is very clear. It emphatically disavows any challenge to the executive order. The entire premise here was that even if the executive order is valid as far as it goes, which pertains to entry, that visa issuance is a distinct function and that there's no statutory authority to deny someone a visa based on their inability at the moment to enter. What do you do about Trump versus Hawaii? So I think that that case is actually extremely helpful to us. It says any alien inadmissible under 1182 is screened out as ineligible to receive a visa. And then it says it again later. It says it twice. Yeah, so I take the point, and we've acknowledged in the brief that that dicta is in tension with our claim. But I just think it's key to see that when you focus on the analysis and the holding in Hawaii, it's actually profoundly helpful to our claim. So if we just take a step back, the question in Hawaii was whether a discrimination ban that was framed in terms of visa issuance also applied to entry. The Supreme Court said no, because these are fundamentally different concepts. The INA is rife with examples that distinguish them. And when Congress uses one of these words, it means what it says, and it doesn't mean the other. And it said specifically these operate in different spheres. It's true to your point, the court, when it sort of laid out the scheme, it operated from a certain picture of how those two spheres relate. It had a kind of Venn diagram where people who are eligible for a visa are a subset of people who are able to enter or who are admissible. And that we think is incorrect. I understand that. I saw that in your brief. But we're bound by court, the Supreme Court dicta. And here it said it twice. It says the second time it says Section 1182, and there it's referring to the whole statute, defines the universe of aliens who are admissible into the U.S. and therefore ineligible to receive a visa. So I guess two points about that. First, respectfully, I don't think it's correct that you're bound by Supreme Court dicta, what this court has said on that question. Considered dicta. Only considered. Well, I think the court has said, and we cite the language at the end of our brief, and I don't have it at my fingertips, but I think this court has said considered dicta by the Supreme Court are highly persuasive, which of course is true. What we have here is an unconsidered dictum of the Supreme Court. It said it twice. Once they've said it once, there's no reason for them not to say it twice. But the point is that the briefing and the argument in that case didn't address this question of how these two classes line up at all. And none of the parties in that case had any reason to bring that to the court's attention because, of course, the plaintiffs in that case wanted to get entry. So it was in their interest to conflate these two categories. But the reason, you know, I think this is unlike many of the cases where you would give even Supreme Court dicta great weight. One of them I've already said, which is that this is not considered dicta. This wasn't the court opining on a question. It was just assuming something and describing a statutory scheme. But the other is that it's unusual where you have a case where the dictum that you're being asked to bind yourselves to is actually flatly contradicted by the balance of the analysis and holding of that very case. So I think it would be helpful if I just talk through our legal theory with reference to Hawaii because the pivotal issue I think everyone agrees. I hope before you finish you'll explain why generosity, if it is generosity, in the condition imposed by the district court in the initial order is really relevant. It seemed to me that what was relied on in the other cases, in one case there was no condition whatever, and in the other case that you rely on there was a condition that was purely ministerial and bound to be fulfilled. Those seem to be much more, well, there's no parallel at all with the one where there's no condition. And the one where there is a condition, generosity doesn't seem to be relevant to it. So by condition you mean the language that says in the event. Yeah. So I think that that has to be understood in context. It's true that in the opinion below here the district court read the prior injunction as including this condition precedent. But if you look at her entire mootness analysis in the decision below, which is at JA 1150 to 1151, her overarching primary point is that the expiration of E02 in and of itself mooted this case. That's what she thought. She thought that because E02 had expired and because the Supreme Court had told her that the expiration of E02 mooted these other cases, that she said it followed necessarily that this case was moot too. And that was before she said anything about the terms of the PI. And then in the few sentences at the end, which she does not describe as an alternative holding, I should just say that first chunk of analysis we think is clearly mistaken because this wasn't a challenge to E02 and the government hasn't defended that reasoning. So really what this comes down to is this language at the end of this section where she says not only did the Supreme Court tell me that all cases about these issues are now moot, which was a mistake on her part, but my order is consistent with that because it included this language. And I think the only way to understand that is as the judge reconciling her order to what she thinks the law required. If it was an alternative holding, it would have obviated everything that came before it. So I would think at a minimum you would want to vacate that and remand because it's always an abuse of discretion to predicate even a discretionary interpretive judgment on a legal mistake. The mootness is a discretionary matter, is it? Well, we don't think this is a matter of mootness because the relief that we're seeking would still benefit us. The question here is, I think, entirely about the merits. The mootness does, at least in one view, turns on the authority of the judge to issue the relief, to provide the relief that you seek. Well, respectfully, I think the Supreme Court has rejected that view. I mean, it depends a little bit what you mean by authority. And, of course, authority can be a synonym for jurisdiction. But what the Court has made clear in the Chafin case especially is that disputes about whether we're entitled to the relief that we're seeking from the Court are not disputes about mootness. The dispute there seemed to relate to the efficacy, the ultimate efficacy, because there were all kinds of scenarios under which if relief were ordered, it would actually be realized. There were some perils in that, but they were overcomable perils. But having a legal barrier is different. Well, respectfully, there's two parts to Chafin. And the first part says very clearly that one of the two spouses is arguing that there's just no legal authority in the Court. That's the phrase the Supreme Court uses and that, therefore, the case is moot. And the Supreme Court says emphatically that confuses mootness with the merits. It's not a mootness issue if the relief that the person is seeking, if it were granted, would benefit them. So there is a merits dispute about the deadline, and I hope I can say some more about that. Before you do, I have a question about legal questions. So when the – after September 30, when the second travel ban expired and the district court dismissed the case, what happened to the visa number at that point? When the district court issued the decision below here? Dismissed the case after the second. Right. That's the judgment that we're appealing from. But what happened to the visa number? She had preserved it, right? Yes. Before September 30. But then she dismissed the case. So what happened to the visa number? Well, nothing happened. I mean, the government – Was it gone? What's that? Didn't it go back into the system for someone else? No. I mean, the fiscal year 2017 program was over with the exception of this, you know, proviso for us. So it's not – No, but the proviso wasn't – you didn't get a stay from this court. We didn't get a stay, but on the other hand, there was nothing happening in the world. I mean, the court ordered the government to reserve these visa numbers for future processing, and they still have not issued 50,000 visas for the relevant year. So it's not like anything was going to change that would require emergency release. I see. So these numbers are still available. Yes. These numbers – I mean, the numbers, we talk about them as numbers. I mean, they're just abstractions. They're just – So nothing has changed on the ground. I do want to say in terms of interpreting this supposed condition precedent in the injunction, I think at a minimum, for the reasons I said, you would want to vacate and remand on that. And part of understanding why, I think, is to sort of put yourself in the position of what this case was about when the preliminary injunction entered and what it would reasonably be understood to have said. So as I said earlier, this was never a challenge to the travel ban, but the district court thought that the cases were related enough that she wanted to wait for the Supreme Court to rule before ruling on the merits of our claims. And we opposed that, but we said, if you're going to do that, you should at least freeze the status quo so that when you come back to this case, after the Supreme Court does whatever it may or may not do, the statutory deadline won't have extinguished our claims. And then in the preliminary injunction opinion – And she didn't do that, right? What's that? She didn't do that. Well, I think that she was reasonably read to have done that, and I want to explain why. In the preliminary injunction order, she incorporates by reference the opinion, and the opinion says that it is granting our request for relief, and it quotes and cites that request for relief. And she says she's addressing our irreparable harm, and she says she's preserving the status quo. So it's true there's these words in the order that, in retrospect, she read to mean something somewhat different, but that was not the reasonable understanding of the order at the time. And at a minimum, again, I think it's far from a foregone conclusion that the district court would read that order the same way. So that's a tough sell. You've now identified two sources of authority where we have to read more into them than they seem to be saying. First, the dicta of the Supreme Court, and now this reading of what the district court said. Well, I take the point, and in both cases, it would be better if the language weren't there. But on the other hand, in both cases, I actually think it's quite clear when you engage with the court in a more serious way and ask what was it trying to do here, and what was its reasoning, it cuts very sharply in our favor. I didn't finish on the Hawaii one, so maybe I'll use that to pivot back to that. On the merits, the question here is under 1201G, whether the plaintiffs are ineligible for a visa under Section 1182. That's the relevant phrase. And so then you look at Section 1182, and Section 1182A enumerates ten classes of people who are deemed ineligible for a visa. So those people clearly shouldn't get visas. But Section 1182F, which is a distinct subsection that's pages away in the U.S. Code, doesn't say a word about visas. So those people are not ineligible for a visa under Section 1182. And the reason you know that is Hawaii, which tells you emphatically that when Congress talks about visas or entry, it means different things. So what should the Supreme Court have said about this in Hawaii? Well, I think my fundamental point is actually the Supreme Court didn't need to say anything about this in Hawaii. It was orthogonal to the issue in Hawaii. The issue in Hawaii, as they said, was whether a ban on discrimination in visa issuance applies to entry. And they said it doesn't. And for our purposes, that's entirely reasonable and correct. The point is, for this very same reason, a rule about suspending entry doesn't allow you to suspend visa issuance. It's the flip side of the same coin. And I actually think, given what the Supreme Court said in its analysis in Hawaii, if this question were before the Supreme Court, it would be very hard for them to write. So did they just mistake entry for visa? Is that the point? I'm sorry? Did they just conflate the analysis for entry and analysis for visa? I think what happened is, I wouldn't put it quite that way. I would say they were focused on the question whether visas and entry are distinct, which indeed they are. And the question wasn't put to them whether one of these is a strict subset of the other. And so they assumed that it was, which in the ordinary case is true. Because in Section 1182A, which is where almost everyone is ruled out for getting a visa, that section specifically says these people are both ineligible for a visa and also inadmissible. So you do get this kind of Venn diagram that they were picturing. There's just this additional fact that 1182F is a different regime that only speaks to entry. And in fact, I think the authors of the executive order and the proclamation on some level understood that because those orders don't purport to suspend visa issuance. They only speak to entry. So again, I think it's true there's dicta. And we've acknowledged it. We're not trying to hide the ball about that. But it's just squarely at odds with the actual opinion. Thank you. May it please the court. I'm Scott Stewart on behalf of the United States. In this case, the district court dismissed the plaintiff's suit for lack of subject matter jurisdiction. This court should affirm because the claims in this case are no longer justiciable. First, and I think the cleanest way for the court to affirm this case is by holding that the plaintiff's claims are now moot because no legally cognizable remedy remains available to them. Isn't that a merits question? It's not, Your Honor. This is something that's been recognized by now several of this court's sister circuits. Right. But a number of those are pre- what's his case? Chaffetz. And only two of them are post and they don't even mention Chaffetz. Sure, Your Honor. Why don't you just forget what the circuit said for the time being and let's deal with the question of Chaffetz and what it means. Sure. You say in your brief that you say this is fiscal year 2019 and the visas are, quote, no longer statutorily available, right? Yes, Your Honor. That sounds like the merits to me. Not so, Your Honor. And if I can explain by distinguishing or explaining what statement held, explaining why it's a different case and why this calls for- I'm just curious. Do you think that- are you making this argument because if we think it's a statutory issue, you'll lose? I'm sorry? Is it a merits issue that you won't succeed? No, Your Honor. We're making this argument because it's the one that we think is compelled by the text of the statute. It's a decision that we think several other circuits have rightly reached. Why don't you put the other circuits out of- I have to tell you, having read those, they aren't very persuasive to me. So why don't we stick with the Supreme Court decision and your views about why this is a jurisdictional question? Sure, Your Honor. So in Schaffin, the court held that a father seeking a re-return, to use the parlance of the case, of his child who had been moved to Scotland under court order could still seek that relief, negating the district court's order, kind of directing the return. He also wanted the appellate courts to vacate and throw out the expenses that he was ordered to pay. Chief Justice Roberts' opinion described those kinds of relief as, quote, typical appellate relief, end quote, on page 173 when he was describing, the Chief Justice was describing the relief as just the undoing of an order. You ordered return. You can now undo that and order re-return. Standard appellate remedy. As for the monetary piece of it, the petitioner in that case, the father in that case was ordered to pay expenses of $94,000. Again, the Supreme Court said that, too, is common relief on appeal, seeking vacater of an award of monetary damages. You didn't have in that case, and you would have had a different case if, for example, the statute there had said, you know, instead of saying, hey, courts can order return, if the court had said, look, you can order one return, but after that return is done, there are no other returns, that is a statutorily unavailable remedy. That would be, Judge Tatel, something more like this case, where you have a statute that clearly says, look, this relief ends. There's no eligibility for these visas left after the end of the fiscal year. You didn't have that in Chapin. The district court didn't agree with you in this case about that. The district court entered an order preserving the visa number after the fiscal year. She surely didn't adopt our mootness argument. I think she did something different in kind with that September 29th order, Your Honor. I mean, she did preserve some visa numbers. But I think the best indication of how the district court viewed this, Your Honor, was her later and ultimately dispositive post-end of fiscal year decision, where she said, quote, if the court deemed it appropriate, it could order the State Department to process the plaintiff's diversity visa applications. But she didn't order that relief. She did not see this as a Pinescu case, as a Presidential SCIA case. She didn't, by the terms of her order, issue a decision that conflicted with Niago or any of those other court of appeals decisions that we cited in our briefing and that I've alluded to here various times, Your Honor. And I think whether this court adopts the statutory view that we've argued that says this statute just makes it so you can't have regressibility and, therefore, the case is moot, or the court looks at the exception found in Pinescu, Marcetic, Presby-SCIA, this doesn't fit either of those. The district court didn't see it as fitting the latter exception.  other courts of appeals have adopted. Just go with a straight statute. I'd say that the district courts in the three cases that come out differently either didn't cite or didn't at all engage with Clause 2 of Section 1154, which I think is very clear that there is no regressibility left here, Your Honors. That's the right decision. It's one that's hit the Presidential ---- And is that your argument on the merits also? Your Honor, our merits arguments are somewhat different arguments. Would you just address that for me for a moment? Assume we think we do have jurisdiction. Sure, Your Honor. I think I'd emphasize in kind of in response to the Trump versus Hawaii discussion. You would rely on that language from Trump versus Hawaii? Yes, Your Honor. And what's your response to counsel's argument that that's inconsidered dictum? I think it's neither inconsidered nor do I think it's dictum, Your Honor. That language appeared, as Your Honor mentioned, two separate times. It appeared in the midst of Pages 2413 to 2415 of the Supreme Court's decision, and that section starts by clearly identifying that what the court was doing was squarely addressing and rejecting, quote, plaintiff's final statutory argument, end quote. The way it did that, Your Honors, was, as it said on 2414, it says, we reject plaintiff's interpretation because it ignores the basic distinction that runs through the INA. So it was relying on this structural distinction to reject an argument that the INA prohibited a sort of discrimination. It was not dicta. It was considered. And the point that the Supreme Court made was correct, and it's important. I'd emphasize kind of two or three little points here, Your Honor, in addition to the fact that this is not dicta. As the Supreme Court recognized, and as Your Honor, Judge Thale mentioned twice, if a person is subject to a suspension of entry under Section 1182F, then that person is inadmissible and so is ineligible to receive a visa. It doesn't matter that Section 1182F speaks of entry rather than admissibility. The Supreme Court recognized at footnote four of its Trump opinion that the two are used interchangeably. Section 1101A13A similarly speaks by saying, the terms admission and admitted mean, with respect to an alien, the lawful entry of the alien into the United States. So a suspension of entry makes somebody inadmissible and ineligible to receive a visa. Now, as for the distinction that my friend on the other side emphasized, the plaintiffs try to make something of this distinction between admissibility and visa issuance. As the Supreme Court explained at 2414 of its Trump opinion, the concepts are distinct, but the distinction does not help the plaintiffs here because, as the Court emphasized, as is the case here, under Section 1182F proclamation, plaintiffs are screened out at the inadmissibility stage and they therefore never reach the visa issuance stage. So on the merits, Your Honor, a ready, easy way to reject the claim would be to just simply follow the Supreme Court's lead and explain that the plaintiffs here were, their entry was suspended, they were ineligible for visas, and therefore their claims fail to state a claim on the merits. Your Honor, unless there are particular questions on the merits, if I can make a couple other points just on the mootness thing. You know, I want to address, there's kind of an equitable theme running through a lot of these cases about the diversity visa program. I want to just emphasize that Congress is well aware of the very human element, the very emotional element, and the disappointments that occur year after year in these diversity visa programs where folks, they get the chance to apply, they get their hopes up, they take actions, they make sacrifices to try to get these visas. Courts such as the Third Circuit have described the results here as lamentable. The Second Circuit has referred to harsh consequences. Others have emphasized just the equitable concerns here. I'd say that these are concerns that arise all the time. Nonetheless, Congress wanted finality. It wanted to draw a clear line. It capped things at the end of the fiscal year. This is not an area where Congress is unaware of the disappointments. Sometimes the reaction to that is private bills. But despite all of these, Congress has stuck to its deadlines. It's stuck to closure. It's stuck to its $50,000 cap. And it's a decision, an equitable decision on Congress's part, that I think warrants considerable respect. Maybe if I can, in addition to Chafin, Judge Tatel, one other difference I draw, in addition to the fact that I think Chafin, although it postdates a number of the Court of Appeals decisions that we're relying upon, it was really establishing well-settled principles. That's why I think the Chief Justice repeatedly described typical or common appellate relief that was sought. The Chief Justice's opinion relies on the Supreme Court's opinion decades before in Powell, involving who had filed suit after he was not seated in the 90th Congress. By the time the suit had come up to the Supreme Court's level, it was the 91st Congress. The Supreme Court held there that that congressman's claim for back pay was not moot. He still had an active claim because he could get that money. I suggest that that would be a different kind of case, Your Honor, if the only claim had been, seat me in the 90th Congress. That's gone. The 90th Congress was done. We were at the 91st Congress. There's nothing that could prevent a court from literally writing the order, restart the 90th Congress, but I think this and many other courts have recognized the practical reality of when things are done, when they're no longer available. When you're stressing the court's language, Mr. Chafin's claim for re-return cannot be dismissed as so implausible that it is insufficient to preserve jurisdiction. So it's the difference between an absolute barrier and a possible barrier. I think that's part of it, Your Honor. The other thing I'd emphasize is that I think physical impossibility may only describe part of the problem. I think legal cognizability is another thing. Ordering the undoing of a previous order is just pretty standard legally cognizable relief. Something's not legally cognizable in that way when Congress has just said, hey, there's no eligibility after this date. All the plaintiffs seek are a determination that would require eligibility. Therefore, it's statutorily cut off. So I'd emphasize that kind of legal cognizability of the remedy, too. Similar with the back pay situation there, Your Honor. As the Supreme Court added in Chafin, look, it could be the case that he could never, he, Mr. Chafin, could never get the money back or that kind of thing. You have that with insolvency. Unless the practicality is part of the opinion. But there's a prior part that your colleague relies on. Right, Your Honor. And there I'd again emphasize that you had a situation where one was maybe a practicality thing. One was maybe a would there be compliance with the court's order consideration. But you didn't have anything in the statute that barred the re-return relief that the plaintiff was seeking. And that's why I suggest it may have been a different case. If you did have that statutory language, maybe there had been a judgment, hey, we don't want the child being shunted across the countries for a long time. We just didn't have that there. Other than that, if there are no further questions, I'd be happy to rest on our briefs. Okay, thank you. Thank you, Your Honor. Mr. Anderson, I think you were out of time, but you can take two minutes if you want. Thank you very much. Your Honor, I'd just like to make a few very quick points. One is on the merits in this question about Hawaii. Of course, you don't need to resolve that to reverse the erroneous mootness dismissal here. You could leave that to the district court where it could be briefed more fully, and I think that would be advisable. But to the extent that you do address it – I'm sorry. Why wouldn't we go in and address the merits? Well, we're not afraid of the merits, and we would be happy for you to, because we think, as I explained, the Hawaii opinion is very helpful to us. And I just want to point out in my colleague's argument, the basic distinction that he says the Supreme Court emphasized is exactly the distinction on which our textual argument rests. And we have not heard a countervailing textual argument from the government at any point in this case other than this following paragraph idea, which we think is clearly wrong. And I just want to say on that it's not just a textual argument. It's also just common sense that when Congress authorized the power of the president to suspend entry under certain circumstances, it wouldn't necessarily have thought that that was going to take away people's visas. The entry suspension might just be for a week, or it might not have to do with who can enter at all. So on the merits, you're welcome. Of course you can address it, and I think it would help us if you did. I'm just saying you don't need to. Only if you win, I'm sure. True by definition, yes. But there's no reason why we shouldn't. I mean, there are cases where, okay, we reverse on the jurisdictional question and send it back, but I can't think of anything about this case that would suggest we should do that. Well, you might think because it's only been briefed in a somewhat cursory way here. But I take the point, and I think honestly because there is this dicta, it would be very helpful to us if the court engaged with the substance of the merits and explained why there isn't an argument apart from the dicta for the government's conclusion. I just want to say on this exchange we had before about the terms of the district court's injunction and whether that was somehow limited with this condition precedent, I think you'll see if you look at JA 150 to 151 that that interpretive judgment by the district court was very clearly predicated on what everyone agrees is a mistake of law about the inherent effect of the expiration of the executive order. And so at a minimum, you would want to vacate and remand for her to reconsider that. Thank you very much. Thank you both. Case is submitted. Court will take a brief recess.
judges: Tatel, Griffith, Williams